PITRE, PLAINTIFF AND APPELLANT, *v.* ESTRELLA, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action for Annulment of Contract.

No. 2489.—Decided March 21, 1922.

PURCHASE AND SALE—DOUBLE SALE—UNRECORDED PROPERTY.—It being proved that the sale of an unrecorded house by a private document was made prior to the sale of the same house to another person by a public deed and that the first grantee in good faith entered into possession of the property in

good faith before the second conveyance was made, it is necessary to conclude that the property belongs to the one who first took possession of it, according to section 1376 of the Civil Code.

The facts are stated in the opinion.

*Mr. P. González* for the appellant.

*Mr. J. Martínez Dávila* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Balbino Pitre brought an action against Margarita Estrella praying for judgment to the effect that a certain document wherein it appears that Pitre sold to the defendant a certain house is null and void and that she should leave the house in question at the free disposal of Pitre.

It was alleged in the complaint that Pitre was the owner of the house in question; that he sold it to Antonio Matos by a public deed of June 13, 1919, and repurchased it from Matos by a public deed of January 18, 1920. That the house is built on land belonging to the partnership of Peña' & Balbás in Santurce, P. R., the owner of the house being under the obligation to pay to the owner of the land a monthly rent and also to give him notice of any transfer of the property. That when Pitre gave notice of the transfer of the house to Matos he requested Peña & Balbás, at the suggestion of Matos, to transfer the lease of the land to Margarita Estrella and instead of merely transferring the lease of the land it was erroneously stated in the private document executed for that purpose that Pitre sold the house to Margarita Estrella.

The defendant answered that she was in possession of the house because it belonged to her by virtue of its conveyance to her by Antonio Matos in payment of certain services.

At the trial the plaintiff testified that he never conveyed the ownership of the house to the defendant; that the private document of July 2, 1919, was executed by mistake;

that he only requested Peña to transfer the land to the defendant; that he sold the house to Matos; that the reason why the lot was transferred to Margarita was that Matos lived in Río Piedras and could not come to Santurce; that he delivered the document to Margarita, but did not know its contents; that the document is signed by his wife, but she did not read it; that the witness does not know how to read; that Matos resold the property to him by a public deed. The witness testified also to the payment of thirty dollars to the defendant by Matos with the understanding that she should leave the house.

Matos testified in corroboration of Pitre's testimony. Peña, of the partnership of Peña & Balbás, also testified that he wrote the document; that Matos, upon requesting him to draft the document in the name of Margarita, said: "My intention is not to sell the house to her, but only that it be in the name of the person who pays the rent of the lot and in order that she may take care of a child that I have there," and that he said to Pitre that the signature of his wife was necessary to the private document of sale to Margarita and read the document to him. Lebrón, of the Department of Labor, testified to a certain complaint made to the Department by the defendant in connection with this matter. His testimony tended to corroborate the testimony of Pitre and Matos regarding the payment to the defendant of the sum of thirty dollars for vacating the house. The defendant testified as follows:

"While I was living in Río Piedras with my children a woman gave birth to a child and this caused some trouble between the husband and the wife. When this trouble arose in the family the father ordered that the child be taken away from the house. The woman asked one of my daughters if she wanted to take the child. She came to me and I told her that I could not take charge of that child because we were poor women and that I could not undertake to care for the child and still less could she do so because she lived away. Then she returned and the husband told her to take the

child for a few days until they decided what to do. She came and asked me to take the child for a few days until the husband and the wife decided what to do, and I kept the child for nine days when a man came and asked why the child was not living with its parents and I told him that I did not know the reason, but that they had entrusted it to my care for a few days until things were settled. He said: 'Send that child home today without fail.' I took the child back and forgot all about it and then after eight or nine days people said that the child had disappeared and it was not known whether it was dead or alive. Antonio Matos came to my house and said to me: 'What do you think of it, Margarita? The child has disappeared and its whereabouts is unknown. People say that it is dead. Do you want to go to that house to see if you can speak to her and inquire where the child is?' I replied: 'I will not go to that house because I would be imposed on.' And he said: 'Margarita, I implore you to go and inquire where that child is because it is not known whether it is dead or alive.' And then I went to see the woman and greeted her and she was surprised. I told her that I wanted to know the whereabouts of the child because I had been told that it was dead and I wanted to know the truth. She hesitated a while and then said: 'No, Margarita, the child is not dead. I gave it to a married couple in Caguas.' I went back immediately and he was waiting for me at home. He asked: 'What has happened, Margarita?' I replied: 'She says that the child is not dead; that she gave it to a married couple in Caguas.' Then he said: 'Margarita, if we can get the child and it is not dead I offer to buy a house for you in town or wherever you want it, * * *.'

"(Plaintiff.)   Q.—Who said that?

"A.—Antonio Matos. Then I said that I had many small children and was poor and could not take charge of that child because I had to work hard, and he said: 'Margarita, when you do not have to pay house rent you can raise the child and you can care for it.' I went out on several occasions, but I never found the child and one day he was coming towards San Juan and he said that when he went back he intended to take a car to see if we could find it, and I said to him: 'If we go in a car we will do nothing. The best thing is for me to get up early and go around to see if I can find it.' I got up very early and walked around until two in the afternoon, and one day when I was going with him I met

a woman who said: 'Margarita, is it you, really?' 'Yes, do you know about a child that they have brought here?' And she replied: 'I do not (sic) know where it is.' And I said: 'Will you please take me there?' And we followed the railroad track and in a small house there a child was sleeping. I did not recognize it and said: 'Is this the child they brought here a few days ago?' And she said: 'It is; it was brought to me by so and so. * * * '

"(Plaintiff.) Q.—Did you take the child away on that occasion?

"A.—I left it there and returned to Antonio and said to him: 'Antonio, the child is in such and such a place.' And he said: 'Margarita, let us go there so that you may show me the place.' And we went and I showed him, and said to him: 'Now, Antonio, you know where the child is; you can give the house to whom you wish.' And he said that both he and his father wanted me to raise the child. Then he said to me: 'Margarita, I will buy a house for you and when I am unable to buy milk for the child you will buy it, and when I have nothing to give it you will have it.' And I said: 'Antonio, I am poor and can not take charge of the child.' And he said: 'I will give you a house and when the day comes to provide for the child's education I will provide for it and the child will be yours and mine.' He purchased the house, brought the key and the documents of the house to me at Río Piedras and gave me money to take the trolley and go to the house. When he gave me the key of the house he said: 'Here you have your house. Go and get the child.' He went with me to the country to get the child and after the child was brought to live in my house he never gave me any money to buy milk. Some three or four months after he brought the mother of the child to my house. * * * "

The plaintiff having rested, the defendant again took the stand and testified that Matos's child was still with her and that she provided for its food and clothing.

The documentary evidence consisted of a copy of the deed of January 18, 1920, wherein Matos appears as selling to Pitre the house in question, and of the private document of July 2, 1919, according to which Pitre sold to Margarita the same house for the sum of $750.

The district court found from the evidence that the house

belonged to Margarita Estrella and entered judgment dismissing the complaint. From that judgment Pitre took the present appeal.

The appellant assigned three errors, as follows: 1. In not ruling on the question of the invalidity of the document. 2. In not holding that the document was null and void. 3. In unduly applying section 1376 of the Civil Code.

The three assignments may be discussed together. The case depends upon whether the plaintiff or the defendant is to be believed. The conflict was adjusted by the trial court against the plaintiff and we think that it acted correctly.

This being so, it is not important that in the document of July 2, 1919, the whole truth concerning the transaction was not stated. Apart from the document, it is clear that after acquiring the ownership of the house Matos agreed with Margarita Estrella to convey the house to her in consideration of the care of a child. Under that parole contract Margarita Estrella accepted the child and took possession of the house as its owner and is still in possession of it, properly fulfilling her obligation to take care of the child that Matos left with her.

There was, therefore, consent, definite object and consideration for the obligation, and Matos alone could not repudiate what had been agreed upon.

The payment of the thirty dollars creates some doubt. But the doubt disappears when the matter is carefully gone into on its merits and the condition of the parties is considered. It seems that for some reason arising some months after the transaction Matos wanted to deprive Margarita of what he had given her and paid her through Pitre a certain sum of money for vacating the house. Margarita was an ignorant woman. She was not aware of the exact extent of her right. She made a complaint to the Department of Labor. Not only Matos but Pitre insisted that she had no title, and if she had not taken advice from an attorney probably Matos

and Pitre would have finally succeeded in making her leave her house on the payment of the small sum of $30, or some such other sum.

Even if Pitre had acquired from Matos with entire good faith on January 18, 1920, it was proved that Matos sold the house to Margarita Estrella before that date and that, prior also to the conveyance to Pitre, she entered into the possession thereof. Section 1376 of the Civil Code, therefore, was not erroneously applied. The titles in this case were not recorded.

We are of the opinion that the judgment appealed from is just and was rendered in accordance with the law, and, therefore, the appeal therefrom must be dismissed and the judgment

*Affirmed.*

Justices Wolf, Aldrey and Hutchison concurred.